**Robert BOWENS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 47343.**

Court of Criminal Appeals of Texas.

April 10, 1974.

Rehearing Denied April 24, 1974.

Joe D. Clayton, Tyler (Court-appointed), for appellant.

Curtis L. Owen, Dist. Atty., Pete Menefee, Asst. Dist. Atty., Tyler, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

The appellant was convicted by a jury for rape; punishment was assessed at seventy (70) years' confinement in the Texas Department of Corrections.

The facts and evidence are substantially as set forth in Waffer v. State, 500 S.W. 2d 659 (Tex.Cr.App.1973), and Waffer v. State, 504 S.W.2d 408 (Tex.Cr.App.1974). These cases involve the rape of prosecutrix and an assault with intent to rob her companion. Except as necessary to pass upon the grounds of error raised by appellant, we shall not repeat in detail the evidence.

In his first four grounds of error appellant contends the court erred in overruling his motion to suppress his confession because: (1) the statement was the fruit of an unlawful arrest; (2) the statement was coerced; (3) he did not affirmatively waive his constitutional rights; and (4) he was not apprised of the nature of the offense for which he was in custody "at the time of the taking of the alleged confession."

The alleged offense occurred on the night of March 22, 1971. At approximately 2:30 p. m. on March 23, the appellant was arrested by virtue of an arrest warrant and was immediately taken before Mrs. Leon Hicks, a Justice of the Peace in Smith County, who apprised the appellant of the charges of rape and robbery by assault and warned him of his rights in accordance with Article 15.17, Vernon's Ann.C.C.P. Appellant signed a statement that he had been so warned. Almost ten days later on April 2, 1971, the appellant, who was in the county jail, sent a message to Chief Deputy Sheriff Massey that he wished to make a statement. He was then taken to the Sheriff's office where he was warned pursuant to Article 38.22, Ver-

non's Ann.C.C.P., and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), by Deputy Sheriff Millington. Millington related that appellant stated he understood his rights, did not want a lawyer and wanted to make a statement, which he did, and then signed it after reading the same which contained on its face the Miranda warnings and a waiver of the right to counsel and the privilege against self-incrimination. The written confession contained appellant's initials where he acknowledged corrections on the instrument.

Testifying at the motion to suppress which constituted the Jackson v. Denno [1] or Article 38.22, Vernon's Ann.C.C.P., hearing, the appellant asserted he had been kicked, beaten, and shocked with an electrical device by several deputy sheriffs which subsequently caused him to give the confession. He called two cell mates who testified that he appeared to have been beaten and that he had blood on his neck. He acknowledged he had not called the jail's doctor's attention to his skinned neck, but related he "kept it until the F.B.I. came."

The eighteen year old appellant, who apparently had a ninth grade education, admitted that he had been warned of his right to silence, right to counsel, etc., by Judge Hicks.

In rebuttal the State called the deputy sheriffs in question who denied that appellant had been abused in any manner and denied he had been physically or psychologically coerced into giving his confession.

Laeuna Froussard, Public Health Nurse for Smith County, related she saw appellant on a number of occasions and observed no marks or bruises. She stated that, aside from appellant's complaint of a hernia which the doctor was unable to detect, the appellant had only complained of headaches, constipation and athlete's foot.

At the conclusion of the hearing the careful trial judge filed his detailed findings of fact and conclusions of law deciding "beyond a reasonable doubt" that the confession "was freely and voluntarily made without any kind of persuasion or compulsion or threats of any kind, and without any promise of any kind having been made to him" and "that no compulsion by means of shocking device was used," etc., on the appellant. He further found the proper warnings had been given and that appellant had affirmatively waived his rights.

Thereafter, substantially the same evidence on the admissibility and voluntariness of the confession was admitted before the jury and the issue thereon was submitted to the jury, who by its verdict rejected appellant's version of the facts.

Appellant's contention that the confession was the fruit of an illegal arrest is based on the ground the arrest warrant under which he was arrested was invalid since the complaint upon which the warrant rested did not reflect probable cause. See Whiteley v. Warden, Wyoming State Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971).[2] We do not understand appellant to contend that the State did not in fact have probable cause. The State does not argue that the arrest warrant affidavit reflected probable cause, but contends the evidence shows that the contention between the arrest and the statement had become so attenuated as to dissipate the taint.

It is true that an illegal arrest may under certain circumstances vitiate a confes-

---

1. 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

2. "The decisions of this Court concerning Fourth Amendment probable-cause requirements before a warrant for either arrest or search can issue require that the judicial officer issuing such a warrant be supplied with sufficient information to support an independent judgment that probable cause exists for the warrant." (Cases cited omitted). Whiteley v. Warden, supra, 91 S.Ct. at p. 1035.

sion, particularly an incriminating verbal statement made contemporaneous with the unlawful arrest where surrounding conditions and circumstances show the statement not to be an act of a wholly free will. See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

This does not mean that every confession which follows an illegal arrest is ipso facto inadmissible. Lacefield v. State, 412 S.W.2d 906 (Tex.Cr.App.1967); Pearson v. State, 414 S.W.2d 675 (Tex.Cr.App. 1967).

■ A confession otherwise shown to have been voluntary is not rendered inadmissible by the fact that its author was under arrest or in custody at the time, even though the arrest may have been under an invalid process or without process or legal right. Gonzales v. State, 429 S.W.2d 882 (Tex.Cr.App.1968).

■ Even if it be conceded that appellant's arrest was illegal, the State has shown by clear and convincing proof that the connection between the arrest and the statement had become so attenuated as to dissipate the taint. Shortly after his arrest, appellant was taken before a magistrate and warned of his constitutional rights and given an opportunity to obtain the assistance of counsel. While the mere passage of time will not alone dissipate the taint, the record reflects that almost ten days elapsed between the magistrate's warning and the giving of the confession resulting from a conversation initiated by the appellant in which the appellant was again warned of his rights.

■ Next, appellant contends the confession was coerced for the reasons discussed above. We conclude the evidence is sufficient to sustain the trial court's findings that appellant was neither physically nor psychologically coerced.

■ Further, considering the totality of the circumstances, it is clear that appellant made a constitutionally permissible waiver of his rights as required by Miranda v. Arizona, supra, and the decisions of this court. See Davis v. State, 501 S.W.2d 629 (Tex.Cr.App.1973); McCandless v. State, 425 S.W.2d 636 (Tex.Cr.App.1968).

Still further, there is no evidence to support appellant's claim that he was not informed of the charge against him "at the time of the taking of the confession." The testimony of the magistrate, the deputy sheriff who took the confession, and appellant's own testimony refute such claim. Clearly he knew what the charge against him was at the time of the confession.

■ Appellant also complains of the failure to appoint him counsel until 22 days after his arrest. In Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), the court wrote:

"Unquestionably, the courts should make every effort to effect early appointments of counsel in all cases. But we are not disposed to fashion a *per se* rule requiring reversal of every conviction following tardy appointment of counsel or to hold that, whenever a habeas corpus petition alleges a belated appointment, an evidentiary hearing must be held to determine whether the defendant has been denied his constitutional right to counsel."

In the instant case it appears that counsel was appointed at the time of arraignment upon the first request for counsel by the appellant, almost one year prior to trial. There is no merit to appellant's contention.

■ Lastly, appellant complains of the court's failure to appoint a psychiatrist to examine him.

Article 46.02, Sec. 2(f)(1), Vernon's Ann.C.C.P., provides in part:

"The court may, at its discretion appoint disinterested qualified experts to examine the defendant with regard to his present competency to stand trial and as to his sanity, and to testify thereto at any trial or hearing in connection to the accusation against the accused . . . ."

At the hearing on the motion to appoint a psychiatrist, appellant testified that he knew what he was charged with, that he did not commit the crime, and there was nothing wrong with his memory, and he knew the difference between right and wrong. He detailed to the court that he instructed his lawyer what kinds of motions he wanted filed, including the one in question, and gave to the court and his attorney a list of witnesses which he wished subpoenaed.

Appellant's mother testified she felt he needed to see a psychiatrist. Over the years she admitted she had taken him to several doctors, but had not told them about his alleged mental problems.

At the time no motion for separate hearing to determine competency had been filed, nor was one ever filed. At the trial no defense of insanity was claimed, nor was any evidence brought to the trial judge's attention which would have been sufficient to have caused the judge to conduct a separate hearing as to appellant's competency to stand trial. See Perryman v. State, 494 S.W.2d 542 (Tex.Cr.App. 1973).

We cannot conclude that under the circumstances presented the court abused its discretion in denying the motion.

The judgment is affirmed.